No. 2189

Second Circuit

———

ROBERTS v. COFFEE

———

(April 8, 1927. Opinion and Decree.)
(May 13, 1927. Rehearing Refused.)

———

*(Syllabus by the Court)*

1. **Louisiana Digest—Evidence—Par. 53 60, 344, 351.**

Where the testimony of plaintiff on the one material point at issue is uncorroborated and is contradicted throughout by defendant, and where the veracity of neither is challenged, plaintiff's demand will be rejected under the rule that the burden is upon him to make out his case by a fair preponderance of evidence.

2. **Louisiana Digest—Evidence—Par. 340 344.**

Where the testimony of plaintiff, who testifies positively as to certain facts but is uncorroborated and the testimony of defendant is to the contrary but is corroborated by circumstances, plaintiff cannot recover.

3. **Louisiana Digest—Appeal—Par. 625, 630.**

While the opinion of the trial court on questions of fact has great weight with an appellate court, it will be reversed when manifestly erroneous.

Appeal from the Second Judicial District Court of Louisiana, Parish of Webster. Hon. Robert Roberts, Jr., Judge.

Action by A. D. Roberts against A. L. Coffee.

There was judgment for plaintiff and defendant appealed.

Judgment reversed and suit dismissed.

Drew & Drew, of Minden, attorneys for plaintiff, appellee.

Stewart & Stewart, of Minden, attorneys for defendant, appellant.

ODOM, J. This is a suit to recover $665.20, alleged to be due plaintiff by defendant for twenty-six cords of "heading blocks" sold and delivered on the V. S. & P. Ry. Co.'s tracks at Willis Spur.

There was judgment in the lower court for plaintiff, and defendant appealed.

OPINION

Only questions of fact are involved.

For a number of years prior to December, 1920, plaintiff was engaged in getting out timber and hauling it to the railroad to be sold. For a portion of the time at least the timber or "heading blocks" which plaintiff delivered on the railroad right-of-way was sold to the defendant, Coffee. Coffee contends that in all his dealings with plaintiff he was acting only as agent for the H. D. Alfrey Company, of Shreveport, which company furnished the money, and that he, Coffee, took up the timber or bolts and paid for them with his check drawn on the funds which had been furnished by Alfrey.

While there is considerable testimony on the point whether Coffee bought as agent for Alfrey & Company or whether he purchased for himself, we think that is not material, for the case hinges upon another point.

Whether Coffee was acting for himself or for another, unless the plaintiff established the contract on which he sues he cannot recover.

As we have reached the conclusion that plaintiff has failed to prove his contract, no other point need be considered.

The plaintiff, as stated, was engaged in putting "heading blocks" on the railroad, which blocks were usually sold either to Coffee for his own account, or to Alfrey & Company through Coffee as agent.

Bills of lading introduced in evidence show that plaintiff shipped to Alfrey at Shreveport eleven carloads of "heading blocks" in the months of August, September and October, 1920; but the testimony shows that in the month of October Coffee notified plaintiff that Alfrey could take no more of the blocks on account of financial embarrassment.

Plaintiff admits this, and admits that whatever arrangements he had had with Coffee individually or as agent theretofore were put to an end in October, 1920. All blocks delivered up to that time were paid for.

But Roberts, the plaintiff, contends that later, about December of that year, Mr. Coffee agreed to purchase the particular lot of blocks over which this controversy arose. In other words, that a new contract was made, and it is on this new contract which he sues.

The blocks were delivered on the railroad by plaintiff and are there yet if they were not moved after the trial of this suit in February, 1924.

Plaintiff testified positively and unequivocally that Coffee agreed to purchase the blocks. Coffee, on the contrary, swore just as positively and emphatically that he did not agree to purchase them. The testi-mony of these two witnesses, the parties to the suit, is as contradictory and conflicting as could possibly be.

If there were no other testimony in the record, we might be in some doubt as to whether there was a contract, in which event the doubt would have to be resolved against the plaintiff, for he carried the burden of making out his case at least by a preponderance of the testimony.

The testimony of the plaintiff as to the contract is unsupported. On the contrary, it is materially weakened by the fact that after these bolts were placed on the railroad and refused by the defendant, plaintiff tried to sell them to another concern. He was asked while on the witness stand if he did not go to Mr. Spivey and offer to sell them these "heading bolts" and he said:

"Mr. Coffee asked me to go to Horton— they had a mill there. He said if I would go there I might get shut of it. In place of going to the mill, I saw Mr. Spivey and asked him to see about it."

But he said he was doing that under Coffee's instructions.

Coffee denies that.

It is not probable, we think, that plaintiff would have gone to another party to sell the bolts if he in fact had sold them to Coffee.

In this connection, Mr. Spivey testified that plaintiff went to him some time between January 1 and April 21 and asked him about buying the timber; and, asked what plaintiff said about it, Spivey said:

"Well, he just asked me if the Hope Heading Company could not handle it for him."

Plaintiff did not tell Spivey that he had gotten the bolts out for Coffee. Coffee testified that plaintiff spoke to him about getting out the bolts and that he told him that Alfrey & Company could not take them and that if he, plaintiff, put out any more they would be at his own risk.

Defendant's testimony on that point is corroborated by that of Albert Owens who also sold bolts to Alfrey. He says that Coffee told him that Alfrey would take no more bolts, and that he had a conversation with plaintiff about the matter, and he was asked:

"Well, now, did not Mr. Roberts tell you that he put this stuff out at his own risk,"

And he said he could not be positive as to just what Roberts told him, but stated:

"Now, we talked about putting out some stuff at our own risk."

These circumstances weaken very materially the testimony of plaintiff and lend support to that of defendant. Then, too, the fact that all the bolts gotten out by plaintiff and others went to Alfrey and that Alfrey was in financial difficulties and could take no more, make it very improbable that Coffee, the defendant, would have purchased these from plaintiff when he had no use and no market for them.

Appellate courts attach weight to the findings of trial courts on questions of fact, and unless their judgment based upon facts are manifestly erroneous they are usually affirmed. But where, as in this case, the lower court manifestly errs, such judgments are reversed.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and that plaintiff's suit be dismissed at his cost in both courts.