McBRIDE, Judge.
Defendant, Park Manor Homes, a partnership, appeals from a judgment in plaintiff’s favor for $102.42, allegedly representing the balance due on an open account denominated “Park Manor Homes & August Encardes”. The account had its inception in early December 1963. Its nature and why plaintiff so carried it should be explained.
Park Manor Homes is engaged in the business of constructing dwelling units and August Encardes was its painting contractor. Encardes was obligated to furnish all paints, etc., in connection with his work. He endeavored to buy his paints, etc., from plaintiff on credit, but plaintiff not being satisfied with Encardes’ credit stability refused to malee sales to him. However, an understanding was reached between plaintiff and Park Manor Homes whereunder plaintiff agreed to sell and deliver to Encardes on credit such paints and supplies as were needed the same to be charged to an account which plaintiff was to open on its books in the style as appears above. It was also agreed by plaintiff, Park Manor Homes, and Encardes that all checks issued by Park Manor Homes to Encardes for his work would name both Encardes and plaintiff as joint payees and that Encardes would endorse and deliver each check to plaintiff who, after deducting an amount sufficient to satisfy the amount due by the “Park Manor Homes & August Encardes” account would remit the difference of the proceeds to Encardes. As is seen defendant Park Manor Homes exposed itself to liability for Encardes’ purchases, but by the arrangement above set forth, had fully and completely protected itself.
Each and every check appellant gave En-cardes found its way into plaintiff’s possession. It is not necessary to analyze all the checks. Suffice it to say that on February 20, 1964, a check for $1800 was involved; on March 20, 1964, there was a check for $255; on April 3, 1964, a check for $165 was issued. Each of these bears Encardes’ endorsement and shows a “For Deposit” stamp of plaintiff on the reverse.
The aggregate of the three mentioned checks far exceeded the amount of any balance due on the “Park Manor Homes & August Encardes” account. The last debit bears the date February 24, 1964. Appellant’s position is that plaintiff should have retained a sufficient amount out of the checks to satisfy in full whatever balance *79 was due on the account and that if plaintiff failed to do so such amounted to a violation of the agreement and appellant can not he held liable for the balance sued for.
Plaintiff concedes that had the checks been handled in accordance with the arrangement above alluded to, the account would have been fully liquidated, but it is plaintiff’s position that the original arrangement was changed and modified and that under a new agreement between it and appellant, the amount claimed in this suit is what remains due on the account.
Plaintiff’s credit manager testified that the original arrangement visited financial hardship upon Encardes, who could not meet his weekly payroll if deductions from the checks were to cover the full amount the joint account showed was owing at the time, and that Encardes contended that deductions should not be made for amounts due for paints he might have purchased but which he had not used. The credit manager stated he telephoned Johnson, one of the partners of Park Manor Homes to that effect and a “new agreement” was made with Johnson whereby in the future Park Manor Homes would indicate on the reverse of each check issued Encardes what jobs had been completed and that plaintiff would deduct from each check only the amounts due for paints which had actually been used on the completed jobs. The credit manager insists such agreement was made about a week after the original understanding.
The testimony of plaintiff’s credit manager stands alone and is uncorroborated to any extent. On the other hand the testimony of Johnson, who vehemently denied there was any new arrangement or that the original agreement was abrogated, modified or was to be deviated from, seems to be corroborated by circumstances. Photostatic copies of seven checks are in evidence, all issued by Park Manor Homes subsequent to the date on which plaintiff’s credit manager says the new agreement was effective. Only on two of the checks are these notations. On the February 14, 1964 check of $1920 there appears: B^4, B-6, B-7, B-8” and on the reverse of the check of February 20, 1964, for $1800 there is written: “D-15, D-l”. These notations, according to the credit manager, represent the squares and lot numbers on which Encardes had completed his work. But nothing in the record shows by whom the notations were made. Johnson denies that he or anyone connected with Park Manor Homes made or had anything to do with said figures or that they were on the checks when Encardes received them. Encardes did not appear as a witness.
The circumstances which seem to corroborate Johnson’s denial of a new agreement may be deduced from the fact that on the following checks, December 6, 1963 for $115.57, December 20, 1963 for $239.30, March 20, 1964 for $255, and April 3, 1964 for $165 there are no notations whatever yet Encardes endorsed and delivered these checks to the plaintiff who retained the full amounts thereof and applied same to the open account. If there were no notations of completed jobs appearing on the checks why should plaintiff be entitled to any part of the proceeds under the alleged modified agreement? Yet plaintiff applied the full amount of the checks to the joint account. In the first place, if a modified agreement such as plaintiff contends for existed, then it would appear logical to suppose that when there were no complete jobs and no notations to be made on the checks, plaintiff would have no interest and the checks would have been made payable to Encardes alone.
The burden of showing that the first agreement was changed and a second one entered into which took the place of the first rested on plaintiff’s shoulders. This would be particularly true where the alleged second agreement was less advantageous to appellant than the original. Plaintiff has failed to prove any subsequent agreement.
Evidence must be considered in the light of probability and consistency. In a case where the testimony of plaintiff as to a certain fact is uncorroborated and is met by that of defendant to the contrary which *80 is corroborated by circumstances, plaintiff cannot recover. Roberts v. Coffee, 6 La. App. 323. The testimony of a defendant that he did not enter into an agreement with the plaintiff which is corroborated by circumstances will be accepted as true. Munson v. Wilson, 6 La.App. 560.
Had plaintiff abided by the only agreement which is shown to have existed, no balance would have remained on the open account.
The judgment appealed from is reversed, and it is now ordered that plaintiffs demands as against appellant be and the same are hereby dismissed at plaintiff’s costs in both courts.
Reversed.